# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **NATALIE WOODS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No.:** |
| v. | ) | |
| | ) | |
| **PNC BANK,** | ) | |
| **NATIONAL ASSOCIATION,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## COMPLAINT

**COMES NOW** Plaintiff, Natalie Woods (hereinafter referred to as "Ms. Woods" or "Plaintiff"), by and through her undersigned counsel of record, and files this Complaint against Defendant, PNC Bank, National Associates (hereinafter referred to as "PNC Bank" or "Defendant"). As grounds for this Complaint, Plaintiff states as follows:

## JURISDICTION AND VENUE

1. This is a suit authorized and brought to secure protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of Congress known as the "Civil Rights Act of 1964," codified at 42 U.S.C. § 2000e *et*

1

*seq.*, as amended by the "Pregnancy Discrimination Act of 1978" (hereinafter referred to as "Title VII").

2. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

3. The venue of this action is properly placed in the Northern District of Alabama pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claims accrued in St. Clair County, Alabama.

## ADMINISTRATIVE EXHAUSTION

4. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") against PNC Bank. Charge number 420-2019-02755 (hereinafter referred to as the "Charge"), alleging sex and pregnancy discrimination, was filed on or about July 3, 2019. (Attached hereto as "Exhibit A").

5. On October 28, 2019, the EEOC issued a Notice of Suit Rights (hereinafter referred to as "RTS Notice") with respect to the Charge.

6. Plaintiff received the RTS Notice on November 4, 2019. (Attached hereto as "Exhibit B").

7. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the RTS Notice for the Charge.

8. Plaintiff has thus exhausted all administrative remedies with respect to the Charge prior to filing the Complaint.

## PARTIES

9. Plaintiff is a citizen of the United States of America, over the age of nineteen (19) years, and is a resident of St. Clair County, Alabama.

10. Plaintiff was, at all times relevant, an "employee" of Defendant within the meaning of 42 U.S.C. § 2000e(f).

11. Defendant is a financial institution, based out of Pennsylvania, with a branch location in St. Clair County, Alabama, whose address is 6384 US-11, Springville, Alabama 35146.

12. Defendant does business in the state of Alabama and is an "employer" within the meaning of Title VII in that it engages in an industry affecting commerce, and has employed more than the requisite number of person for the requisite duration of time, pursuant to 42 U.S.C. § 2000e(b).

13. Defendant was Plaintiff's employer during all times relevant to this Complaint.

14. The actions that are the basis of this Complaint occurred at PNC's Springville, Alabama location.

## FACTUAL ALLEGATIONS

15. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through fourteen (14) above with the same force and effect as if fully set out in specific detail herein below.

16. Plaintiff is a woman.

17. On or about July 5, 2015, Defendant hired Plaintiff as a Bank Teller at its Springville, Alabama branch location.

18. In or around December 2018, Plaintiff informed her branch Manager, and direct supervisor, Charlotte Matthews ("Ms. Matthews"), that she moved in with her boyfriend.

19. Upon moving in together, the boyfriend began physically abusing Plaintiff.

20. In or around late February or early March 2019, Plaintiff informed Ms. Matthews of the abuse and that she broke up with the boyfriend.

21. In that same conversation, Plaintiff also informed Ms. Matthews that she was seeking a Protection From Abuse Order (PFA) against the boyfriend.

22. Plaintiff notified Ms. Matthews because if the boyfriend came into the branch, Plaintiff would have to go into the back of the store to stay away from him.

23. On or about May 1, 2019, Plaintiff received notification that she was selected for a promotion to a new position in Defendant's Center Point, Alabama location.

24. Plaintiff was set to begin reporting to the Center Point, Alabama branch location on or about May 28, 2019.

25. Shortly after learning of the promotion, Plaintiff informed Ms. Matthews that she was pregnant with her ex-boyfriend's baby.

26. Plaintiff informed Ms. Matthews of the pregnancy because she was going to need time off to attend doctor's appointments related to her pregnancy.

27. Plaintiff advised Ms. Matthews that she did not want to inform anyone else at PNC about her pregnancy due to the sensitive situation surrounding her pregnancy and her relationship with the father.

28. Ms. Matthews scornfully informed Plaintiff that her pregnancy was going to cause problems because it would "short the branch" when she took time off.

29. Ms. Matthews took issue with the fact that Plaintiff was pregnant and planned to take time off for doctor's appointments and maternity leave after birth.

30. Ms. Matthews tried to force Plaintiff to inform the Regional Manager, David Hedges ("Mr. Hedges"), that she was pregnant.

31. Plaintiff did not want to inform Mr. Hedges of her pregnancy, as she wanted it to remain private due to the sensitive situation with the baby's father; against Plaintiff's wishes, Ms. Matthews took it upon herself to inform Mr. Hedges of Plaintiff's pregnancy.

32. Less than one (1) week before Plaintiff's transfer, on or about May 22, 2019, Ms. Matthews terminated Plaintiff's employment without warning.

33. Ms. Matthews accused Plaintiff of using profanity in front of customers in the branch approximately one (1) month prior, on or about April 19, 2019.

34. Plaintiff did not use profanity in the branch as alleged by Ms. Matthews.

35. To support the alleged basis for termination, April Morris ("Ms. Morris"), Plaintiff's former co-worker, allegedly provided a statement dated April 23, 2019, alleging that Plaintiff used profanity in the bank on April 19, 2019.

36. To the extent Plaintiff used profanity at all on or about April 19, 2019, it would not have occurred in the presence of a PNC customer.

37. Defendant's alleged investigation into the allegations against Plaintiff did not reveal any evidence of Plaintiff cursing in front of customers.

38. If Plaintiff used profanity in the branch as alleged, Mr. Hallmark would have been able to hear it from his office.

39. Defendant's alleged, non-discriminatory reason for terminating Plaintiff is patently false.

40. Further, even if Plaintiff had cursed in front of customers on or about April 19, 2019, Defendant deviated from its "Profanity guidelines for employee/customer related incidents" (the "Policy") when it terminated Plaintiff on or about May 22, 2019.

41.     According to the Policy, even if Plaintiff cursed in front of a customer on April 19, 2019, as alleged by Defendant, Defendant should have only issued Plaintiff a written warning.

42.     Plaintiff's alleged misconduct – to the extent it occurred – did not warrant termination under Defendant's Policy.

43.     Moreover, upon information and belief, there were multiple, non-pregnant current and former employees who used profanity in the branch in front of customers and management, including, but not limited to, the following individuals: (1) Wendy Murrell; (2) Mary Clair Glaze; (3) April Morris; (4) Chelsea Burke; and (5) Paul Hallmark.

44.     Ms. Matthews did not investigate or discipline these employees in any way, much less terminate their employment.

45.     In fact, Plaintiff personally reported use of profanity by other employees in the branch while in the presence of customers to Ms. Matthews on multiple occasions.

46.     Ms. Morris specifically cursed on multiple occasions in the presence of customers, while in front of Ms. Matthews and other members of management.

47.     When Plaintiff reported it to Ms. Matthews, she instructed Plaintiff to ignore it, and threatened to fire Plaintiff if she ever reported the profanity to human resources or to Mr. Hedges.

48. Defendant discriminatorily applied its disciplinary policies and procedures as to Plaintiff as compared to those individuals outside of Plaintiff's protected class who engaged in the same conduct Defendant alleges warranted Plaintiff's termination.

49. Notably, after Defendant unlawfully terminated Plaintiff's employment, Defendant's employees further harmed Plaintiff by spreading cruel rumors about Plaintiff's pregnancy.

50. Specifically, upon information and belief, after Defendant terminated Plaintiff and she filed the attached EEOC Charge, Defendant's employees spread rumors that Plaintiff moved to California to abort her baby because she did not know who the baby's father was.

51. Such rumors were malicious, and were made to cause Plaintiff embarrassment, emotional distress, and loss of enjoyment in life.

## COUNT I- SEX (PREGNANCY) DISCRIMINATION IN VIOLATION OF TITLE VII

52. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through fifty-one (51) above with the same force and effects as if fully set out in specific detail herein below.

53. Plaintiff is a member of a protected class under Title VII in that she is a woman.

54. At all times relevant to this cause of action, Plaintiff was qualified to perform her job responsibilities as a Bank Teller.

55. Plaintiff performed her job responsibilities for Defendant satisfactorily up to and including the date of her termination.

56. Plaintiff became pregnant during her employment with Defendant.

57. On or about May 1, 2019, Defendant informed Plaintiff that she was up for a promotion that would require her to transfer to a different branch.

58. Soon thereafter, Plaintiff learned of her pregnancy, and reported the same to Ms. Matthews.

59. Plaintiff asked Ms. Matthews to keep her pregnancy private due to the sensitive situation surrounding her pregnancy and her relationship with the father.

60. Ms. Matthews responded to Plaintiff's news by stating that her pregnancy was going to cause issues for her job because her time off would create a "shortage" at work.

61. Ms. Matthews then informed Mr. Hedges, Regional Manager, about Plaintiff's pregnancy, disregarding Plaintiff's privacy concerns.

62. Shortly after Plaintiff informed Ms. Matthews about her pregnancy, Ms. Matthews terminated Plaintiff's employment, without warning, on or about May 22, 2019.

63. Ms. Matthews alleged that Plaintiff used profanity in front of customers approximately one (1) month prior, on or about April 19, 2019.

64. Plaintiff did not use profanity as alleged by Defendant, much less in front of any customers.

65. In fact, Ms. Matthews instructed Plaintiff to ignore the use of profanity by others in the bank, even when a customer was present.

66. Defendant's employees who were similarly situated to Plaintiff, but not pregnant, were not terminated by Defendant when their misconduct was comparable to or worse than Plaintiff's alleged misconduct.

67. Defendant deviated from its policies and procedures in terminating Plaintiff's employment on or about May 22, 2019.

68. Defendant's termination of Plaintiff was motivated by her pregnancy.

69. As a result of Defendant's conduct, Plaintiff was deprived of income, and subjected to mental, emotional, and physical distress, pain, and suffering.

**COUNT II- SEX DISCRIMINATION IN VIOLATION OF TITLE VII**

70. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through sixty-nine (69) above with the same force and effects as if fully set out in specific detail herein below.

71. Plaintiff is a member of a protected class under Title VII in that she is a woman.

72. At all times relevant to this Complaint, Plaintiff was qualified to perform her job duties as a Bank Teller.

73. Plaintiff satisfactorily performed her job responsibilities as a Bank Teller up to and including the date of her termination.

74. Plaintiff became pregnant during her employment with Defendant.

75. On or about May 1, 2019, Defendant informed Plaintiff that she was up for a promotion that would require her to transfer to a different branch.

76. Soon thereafter, Plaintiff learned of her pregnancy, and reported the same to Ms. Matthews.

77. Plaintiff asked Ms. Matthews to keep her pregnancy private due to the sensitive situation surrounding her pregnancy and her relationship with the father.

78. Ms. Matthews responded to Plaintiff's news by stating that her pregnancy was going to cause issues for her job because her time off would create a "shortage" at work.

79. Ms. Matthews then informed Mr. Hedges, Regional Manager, about Plaintiff's pregnancy, disregarding Plaintiff's privacy concerns.

80. Shortly after Plaintiff informed Ms. Matthews about her pregnancy, Ms. Matthews terminated Plaintiff's employment, without warning, on or about May 22, 2019.

81. Ms. Matthews alleged that Plaintiff used profanity in front of customers approximately one (1) month prior, on or about April 19, 2019.

82. Plaintiff did not use profanity as alleged by Defendant, much less in front of any customers.

83. In fact, Ms. Matthews instructed Plaintiff to ignore the use of profanity by others in the bank, even when a customer was present.

84. Defendant's employees who were similarly situated to Plaintiff, but not a woman, were not terminated by Defendant when their misconduct was comparable to or worse than Plaintiff's alleged misconduct.

85. Defendant deviated from its policies and procedures in terminating Plaintiff's employment on or about May 22, 2019.

86. Defendant's termination of Plaintiff was motivated by her sex, woman.

87. As a result of Defendant's conduct, Plaintiff was deprived of income, and subjected to mental, emotional, and physical distress, pain, and suffering.

WHEREFORE premises considered, Plaintiff demands judgment against the Defendant for compensatory damages, punitive damages, consequential damages, incidental damages, the costs of this action, interest, attorneys' fees, and any other, further, and different relief to which she may be entitled.

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.

Respectfully submitted,

*s/ Joshua A. Wrady*
Joshua Wrady (ASB-9617-J68W)
Courtney Crampton (ASB-3685-J61X)
*Attorneys for Plaintiff*

**WRADY MICHEL & KING**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
Joshua@wmalabamalaw.com
Tel:(205)980-5704
Fax:(205)994-2819


**DEFENDANT TO BE SERVED BY PROCESS SERVER AT THE FOLLOWING ADDRESS:**

PNC Bank, National Association
c/o r/a CORPORATION SERVICE COMPANY INC
641 South Lawrence Street
Montgomery, Alabama 36104